JOSÉ A. CABRANES, Circuit Judge,
dissenting from the order denying rehearing en banc:
I respectfully join, without qualification, in Judge Raggi’s forceful opinion. The dissenters having failed to persuade a majority of the active judges to rehear this appeal, our concerns necessarily now rest in the hands of our highest court. I write separately, and in my name alone, for the sole purpose of recalling some salient aspects of en banc practice in the Second Circuit.[1]
As a result of our decision not to rehear this case before the full court of active judges, by a vote of seven to six, one can know for certain only one thing: Judge Raggi’s opinion dissenting from the denial of en banc review is, by definition, an expression of the views of the six subscribing judges that the panel’s resolution of this case presents legal issues of exceptional importance, and defies not only our own case law, but controlling Supreme Court precedent. In contrast, the order itself denying rehearing without elaboration may, or may not, reflect the substantive views of particular judges in the seven-judge majority voting against rehearing.[2] This is so because, even when the criteria enumerated in Rule 35 are satisfied — when “(1) en banc consideration is necessary to secure or maintain uniformity of the court’s decisions; or (2) the proceeding involves a question of exceptional importance”[3]' — the active circuit judges nonetheless exercise considerable discretion to vote against en banc rehearing.[4]
In light of how judges of the Second Circuit have historically exercised such *256 discretion, the decision not to convene the en banc court does not necessarily mean that a case either lacks significance or was correctly decided. Indeed, the contrary may be true. An oft-cited justification for voting against rehearing, perhaps counter-intuitively, is that the case is “too important to en banc.”[5] This view was apparently first stated in published case law in 1973 by Judge Irving R. Kaufman, who voted against en banc consideration of a panel decision in order to “wisely speed this case on its way to the Supreme Court as an exercise of sound, prudent and resourceful judicial administration.”[6] This view has perdured,[7] leaving open the possibility that some judges in the majority in any particular case may have voted against en banc rehearing precisely because of the importance of the legal questions at issue.
Other reasons for voting against rehearing that may not be related to the case’s merits can be grouped under what Judge Jon 0. Newman called the “virtues of restraint.” [8] Such “virtues” include judicial economy,[9] collegiality,[10] and what Chief Judge Robert A. Katzmann more recently described as “our Circuit’s longstanding tradition of general deference to panel adjudication — a tradition which holds wheth *257 er or not the judges of the Court agree with the panel’s disposition of the matter before it.”[11]
Accordingly, a reader should not attempt to ascertain the substantive views of particular judges in the majority (or even, in some circumstances, the unsuccessful minority) from a decision not to rehear a case en banc. Nor should a reader accord any extra weight to a panel opinion in light of such a decision, inasmuch as the order denying rehearing may only reflect, for some judges, a general aversion to en banc rehearings or faith in the Supreme Court to remedy any major legal errors.
In sum, all one can know for certain about a vote like this one is that seven active circuit judges did not wish to rehear this case, while the six other active circuit judges strongly believed that the panel opinion presented multiple legal errors of exceptional importance warranting correction.

.It seems worthwhile to explain again the variation in the number of en banc dispositions between the Second Circuit and our sister courts of appeal, perhaps tracing back to Judge Learned Hand’s promise that he would never vote to convene an en banc court. Gerald Gunther, Learned Hand: The Man and the Judge 515-16 (1994); see also Wilfred Feinberg, The Office of Chief Judge of a Federal Court of Appeals, 53 Fordham L.Rev. 369, 376 (1984) (“The tradition in the Second Circuit, a tradition that goes back to Learned Hand, is that in bancs are not encouraged.”). Our Court hears the fewest cases en banc of any circuit by a substantial margin, both in absolute terms and when considering the relative size of our docket. See Federal Bar Council, Second Circuit Courts Committee, En banc Practices in the Second Circuit: Time for a Change? 6 (July 2011). As the Federal Bar Council has observed, ”[t]he vast difference ... indicates that something different is happening when the judges of the Second Circuit consider whether to grant en banc review.” Id. at 22.

. Indeed, nothing about the merits of a case is revealed in the standard order denying rehearing, which, as here, states: “Following disposition of this appeal on [a particular date], an active judge of the Court requested a poll on whether to rehear the case en banc. A poll having been conducted and there being no majority favoring en banc review, rehearing en banc is hereby DENIED.” The order itself, moreover, does not reveal the precise tally of the en banc poll. Thus, in cases where no dissenting opinions are filed, six active judges may still have voted in favor of en banc rehearing.

. Fed. R.App. P. 35(a).

. See id., Advisory Committee Notes (1998 Amendments).

. James L. Oakes, Personal Reflections on Learned Hand and the Second Circuit, 47 Stan. L.Rev. 387, 392 (1995) (emphasis supplied).

. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1021 (2d Cir.1973) (Kaufman, J., concurring in the denial of rehearing en banc).
Judge Kaufman argued, in a related vein, that en banc proceedings threatened the “institutional integrity of the appellate court and the three-judge panel” because they send the message that “decisions reached by three-judge panels are not final, but represent merely one step on an elongated appellate ladder.” Irving R. Kaufman, Do the Costs of the En Banc Proceeding Outweigh Its Advantages?, 69 Judicature 7, 8 (1985); see also Green v. Santa Fe Indus., Inc., 533 F.2d 1309, 1310 (2d Cir.1976) (per curiam) (denying en banc review “not because we believe these cases are insignificant, but because they are of such extraordinary importance that we are confident the Supreme Court will accept these matters under its certiorari jurisdiction,” and stating that "[a] case in which Supreme Court resolution is inevitable should not be permitted to tarry in this Court for further intermediate action”).

. As recently as 2001, then-Chief Judge John M. Walker urged an approach to en banc review "that holds the process in reserve for the exceptional case that is an unlikely candidate for Supreme Court resolution.” John M. Walker, Jr., Foreword, 21 Quinnipiac L.Rev. 1, 14 (2001).

. Jon O. Newman, In Banc Practice in the Second Circuit: The Virtues of Restraint, 50 Brook. L.Rev. 365 (1984).

. By avoiding the costs and delays associated with convening en banc, Judge Newman argued that we can better "use judicial resources efficiently, concentrating our efforts on the prompt hearing and disposition of cases by panel opinion.” Jon O. Newman, In Banc Practice in the Second Circuit, 1989-93, 60 Brook. L.Rev. 491, 503 (1994). Other judges have likewise questioned the utility of en banc rehearings, insofar as they "pro-ducen either a majority opinion that was crafted in a purposefully vague manner to forge a consensus within the court, or a litany of diverging opinions, injecting a degree of uncertainty into the law.” Kaufman, supra note 6, at 8.

. Judge Newman observed twenty years ago that our limited approach to en banc rehearings has “contributed significantly to the high level of collegiality that this court enjoys.” Newman, supra note 9, at 503. At about the same time, Judge Oakes likewise reflected that "our en banc policy has helped us to maintain collegiality by avoiding the divisions that have caused friction on other courts of appeal." Oakes, supra note 5, at 393. More recently, Judge Gerard E. Lynch stated that, although respect for a colleague's strongly held view may bring about acquiescence, it may be seen as an investment in collegiality. Gerard E. Lynch, Comment at the Columbia Law School Courts and Legal Process Workshop (April 23, 2012).

. Ricci v. DeStefano, 530 F.3d 88, 89 (2d Cir.2008) (Katzmann, J., concurring in the denial of rehearing en banc).